### H. W. WILLIAMS & Co. v. MOORE BROS.

#### No. 1586.

**Transfer in Fraud of Creditors—Void Sale.**—An insolvent merchant who was under indictment sold to one of his creditors his entire stock of goods, worth about $800, for $200 in cash and the satisfaction of his debt to such creditor, amounting to about $600. The cash payment was demanded to enable the debtor to flee the country, which purpose and the existence of other debts was known to the vendee. *Held,* that the sale was void as to other creditors of the vendor.

APPEAL from Bosque. Tried below before WILLIAM M. KNIGHT, Esq., Special Judge.

*Green & Humphries* and *Armstrong & Flournoy,* for appellants.—A sale by an insolvent debtor of all his property to one of his creditors is conclusively fraudulent when the debtor is insolvent and the purchaser has knowledge thereof, provided he pays the difference between his debt and the value of the property, however small, in money, and it is placed be-

yond the control of the debtor. Wallis v. Adoue & Lobit, 76 Texas, 118; Gallagher v. Goldfrank, Frank & Co., 75 Texas, 563; Seligson v. Brown, 61 Texas, 180; Elser v. Graber, 69 Texas, 222; Willis v. Yates, 12 S. W. Rep., 232.

*Alexander & Campbell*, for appellees.—A debtor has a legal right to prefer his creditor by a sale of his property in satisfaction of the debt, provided no more property is taken than is reasonably sufficient to satisfy the debt; and although the purchase may exceed the amount of the indebtedness, if the excess is reasonably necessary for the attainment of the lawful purpose of satisfying his actual debt, then, in the absence of fraudulent intent, the preference will stand, and such payment of the excess by the creditor may be either by money or note. A sale to a preferred creditor will not be set aside when the excess paid over the value of the property was not unreasonable, and where it appears that it was necessary to pay the excess in order to enable the creditor to secure the payment of his debt. Davis v. Beason, 77 Texas, 607; Harness Co. v. Schoelkopf, 71 Texas, 418; Bump on Fraud. Con., 2 ed., 192; Young v. Stallings, 5 B. Mon., 307; Hobbs v. Davis, 50 Ga., 213.

TARLTON, CHIEF JUSTICE.—This appeal is from a judgment in behalf of the appellees. The proceeding is under the statute for the trial of the right of property, the appellees being the claimants and the appellants attaching creditors. The property consisted of a stock of goods and merchandise which formerly belonged to one J. E. Manney, a merchant at Valley Mills, Bosque County, Texas.

The issues involved grow out of a transaction had between the agent of the appellees and Manney on the 8th or 10th of November, 1890. At this date the appellants were creditors of Manney in the sum of $501.50, and the appellees were also such creditors in a sum not exceeding $633. The demand of the plaintiffs was reduced to judgment on the 8th day of September, 1891, in the sum of $528.30.

Manney was insolvent, and this fact was known to the agent of the appellees. He was under indictment for a violation of the penal laws of the State. The agent of the appellees, for the purpose of collecting their debt, and Manney, for the purpose of securing money to enable him to flee the country and to avoid arrest, entered into the following transaction: The agent agreed to purchase the entire stock of goods, to take an invoice of the stock, and to cancel the debt of his principals, and to pay to Manney the sum of $234 in money, and if there was any residue, to pay it to H. W. Williams & Co., of the existence of whose debt he was apprised. The payment of the money to Manney was insisted upon by him as a condition to the transaction, and the agent knew the purpose for which Manney desired the cash payment.

After the terms of the agreement were thus settled, Manney disappeared, leaving a power of attorney with one Frank Kell to consummate the transaction. Accordingly, an invoice of the stock was taken, amounting to not less than $1200, and to as much, probably, as $1300. Kell, for Manney, executed a bill of sale to the appellees for the stock of merchandise. The agent cancelled the debt of the appellees, and paid to Kell, according to the terms previously arranged with Manney, a sum in cash not less than $200.

On November 10, 1890, the plaintiffs caused a valid writ of attachment to be levied upon the stock of goods in question, the value of which was by the officer estimated to be in the sum of $892.76. On November 14, 1890, the appellees made oath and entered into bond as claimants of the property.

The appellees, a few days afterwards, sold the entire stock to Kell and Gibbs for the sum of $775, and we find the stock to have been worth, at the date of the transaction, at least that sum of money, and even to have exceeded that amount, according to the preponderance of the evidence.

*Opinion.*—The trial judge filed conclusions of fact and law in this case. We are constrained to dissent from him with reference to the material features of his findings in both respects.

In his conclusions of fact he fails to state *definitely* the amount of the indebtedness due to the appellees by Manney, and the value of the stock at the time of the transaction involved. This vagueness of conclusion was probably due to the indefinite manner in which the witnesses testified upon the questions of amount and value. An analysis of the testimony, however, justifies us, we think, in concluding as an irresistible inference from the record that the amount of the debt sought to be secured did not exceed $633, and was perhaps less, and that the amount of the goods taken in payment of that debt was in value not less than $775, and probably greater than that sum.

Under such circumstances the payment in cash of $200, according to the terms of the transaction agreed upon between the appellees' agent and the insolvent debtor, Manney, must be held to have brought about an effect which the law does not countenance. To the extent of the difference in the amount of the debt secured and the value of the goods taken, the visible property of the debtor was placed effectually beyond the reach of his creditors. This, in our opinion, was a manifest and material excess, under the facts of this case. The payment of this sum of money was exacted as a condition by the debtor, to effect a purpose which the law denounces as fraudulent, and which purpose was known to the agent of the appellees negotiating the transaction. To the extent of this excess other creditors than the appellees were " prevented from enforcing their

claims against a part of the property not necessary to pay " the claim of the appellees. Oppenheimer v. Halff, 68 Texas, 409.

The transaction, therefore, is one which the law, without reference to the intention of the creditor in accepting the goods, declines to uphold. Black v. Vaughan, 70 Texas, 47; Wallace v. Adoue, 76 Texas, 118; Gallagher v. Goldfrank, Frank & Co., 75 Texas, 563; Seeligson v. Brown, 61 Texas, 180; Elser v. Graber, 69 Texas, 222.

The doctrine recognized in these authorities, applied to the facts of this case as the record discloses them to us, requires us to reverse the judgment, and to order a rendition in this court of such a judgment as should have been entered in the trial court.

It is so ordered.

*Reversed and rendered.*

Delivered February 24, 1894.