## WADE M. SMITH v. E. F. BOOTY.

Decided March 25, 1908.

1.—Illegal Contract—Profits—Action to Recover.

After an illegal contract or enterprise is ended, and the profits or losses ascertained by an agreement or adjustment between the parties, the courts

will enforce an obligation to account for such profits or losses. That the original enterprise was against public policy, and therefore void, is no defense.

**2.—Same—Case Stated.**

Where, upon the closing of a deal in futures, one of the parties, by reason of fraud or mistake, paid to the other an amount in excess of the balance due, which had been ascertained by agreement of the parties, the fact that the original transaction was illegal would not prevent a recovery of the amount so paid.

Appeal from the County Court of Travis County. Tried below before Hon. Jno. W. Hornsby.

*John Dowell,* for appellant.

*D. S. Chessher,* for appellee.

RICE, ASSOCIATE JUSTICE.—Appellant brought this suit against appellee to recover the sum of $352.50, alleged in his first count to have been obtained from him by appellee through fraud and misrepresentation; and in his second count that said money had been paid by him to appellee through mistake, to which appellee interposed a general demurrer and general denial, and pleaded specially that the transaction for which the check for $352.50 was given was a wagering or gambling contract, against public policy, and therefore the money could not be recovered from him by appellant.

Appellant replied by supplemental petition, setting up general and special demurrers, general denial, and pleaded specially that the check was never paid to appellant; that the same was false and fraudulent, and that there was no contract or relation of dealing in futures between the parties as to this transaction, and that the money for which the suit was brought was paid to appellee in a settlement outside of any such transaction of dealing in futures.

The court overruled all the demurrers, and upon trial before the court, judgment was rendered for defendant, from which appellant has appealed.

It appears from the evidence that at the time of this transaction appellant was a broker, engaged in selling grain, stocks, etc., on the market, and that appellee furnished the money with which to buy stocks and grains for him as his agent; that he dealt through Morehead & Co. in his own name, and that appellee was not known in the transaction; that on the 15th of August, 1906, appellee Booty had with appellant two separate contracts, each for 20,000 bushels of wheat, and a balance to cover the margins on said two contracts of $47.50, and that at said time appellee gave his check to appellant on a bank at Georgetown, Texas, for the sum of $352.50, to make his margin of $400 to protect his contracts in the event the market changed against him; that on August 17 appellee for some reason became dissatisfied, and demanded a settlement from appellant and directed him to close out all contracts that he had with him; that appellant, acting under said instructions, closed out all stock and grain contracts that he then had for appellee, and balanced his account on the ledger, making a final settlement with him, at which

time it appeared that appellant was due appellee the sum of $862.50, not taking into consideration said check for $352.50, which had not been paid, but which fact was unknown to appellant, it having been sent on by him to the bank; nor had this check for $352.50 been used in said illegal business. Appellant not having the ready money on hand with which to pay appellee the said sum of $862.50, was preparing to give him a check therefor, when appellee suggested that said check should be made not only for the $862.50, but to cover the $352.50 check which he had formerly given appellant on August 15. Whereupon appellant asked if said check had been paid, and appellee replied that the same was good, the banker upon whom it was drawn having told him, appellee, that his check for $10,000 was good at said bank. Relying upon this statement so made by appellee, appellant drew his check in favor of appellee upon the Austin National Bank for $1215, which check was paid to appellee; but said check for $352.50 was never paid, and in a few days thereafter was returned to appellant unpaid and appellee has never repaid said amount.

It seems, therefore, from the evidence that appellant would be entitled to recover this amount from appellee together with interest thereon from the date of its payment, unless he could be defeated in its recovery by reason of the fact pleaded by appellee that it was given in satisfaction of a wagering contract, which is against public policy.

Appellant by his fourth, fifth and sixth assignments of error, considered together, urges, in effect, that the court erred in rendering judgment for the defendant because the undisputed evidence shows that the money for which appellant sues was obtained from him through fraud and false representations and deceit, and that the same was his own individual money and never had been used in any illegal business, and that defendant had no right, title or claim to the same whatever. We think that where, as in the present case, the transactions between the parties, based upon the original contract, are closed, and they have voluntarily settled and adjusted their accounts based thereon, and that the amount thereof has been determined between them, then suit may be brought for the recovery of such amount so ascertained, and that the defense set up by appellee thereto could not be successfully interposed, for the good and sufficient reason that the court is not called upon to aid in carrying out or in any wise effectuating the past illegal contract between them. (DeLeon v. Trevino, 49 Texas, 88; Lewis v. Alexander, 51 Texas, 578; Pfeuffer v. Maltby, 54 Texas, 454; Floyd v. Patterson, 72 Texas, 202, 25 S. W., 1010, 30 Am. Rep., 101; book 2, Rose's Notes, p. 872; 1 Page on Contracts, p. 527, and note thereto; id., vol. 2, p. 1742, sec. 1142.)

In the case of DeLeon v. Trevino, *supra*, it was held that although a contract may be illegal, still it would not be illegal or immoral for the parties thereto, after its completion, to fairly settle and adjust the profits and losses which have resulted therefrom. The vice of the contract does not enter into such settlement.

In the case of Brooks v. Martin, 2 Wall., 70, it was held that if a partnership contract, confessedly against public policy, has been

carried out and money contributed by one of the parties has passed into other forms, the results of the contemplated operation completed, a partner in whose hands the profits are can not refuse to account for and divide them, on the ground of the illegal character of the original contract.

In the case of Planters' Bank v. the Union Bank, 16 Wall, 483, the court says, among other things: "Nor should the court have charged that, in the circumstances of this case, no action would lie for the proceeds of the sales of the Confederate bonds which had been sent by the plaintiffs to the defendants for sale and which had been sold by them, though the proceeds had been carried to the credit of the plaintiffs, and made a part of the account. It may be that no action would lie against a purchaser of the bonds, or against the defendants, on any engagement made by them to sell. Such a contract would have been illegal. But when the illegal transaction has been consummated; when no court has been called upon to give aid to it; when the proceeds of the sale have been actually received, and received in that which the law recognized as having had value; and when they have been carried to the credit of the plaintiffs, the case is different. The court is not then asked to enforce an illegal contract. The plaintiffs do not require the aid of any illegal transaction to establish their case. So in Sharp v. Taylor, 2 Phillips Ch., 801, where a bill was filed to recover a moiety of freight money, the whole of which had come into the hands of one of the joint owners of the vessel. The defense was that the trade in which the vessel had been engaged and in which the freight has been earned, was illegal, and in violation of the navigation laws; but the Chancellor said: 'Can one of two partners possess himself of the property of the firm, and be permitted to retain it, if he can show that in realizing it some provision in some Act of Parliament has been violated? The answer is that the transaction alleged to be illegal is completed and closed, and will not be in any manner affected by what the court is asked to do as between the parties.'"

Quoting again from DeLeon v. Trevino, *supra*, the court says: "Is this not, we ask, equally true in this case? The partnership enterprise in which appellees and DeLeon had been engaged had been fully completed before they had voluntarily, as between themselves, adjusted its results. If the enterprise had been successful and DeLeon, who had been the active partner, had been found to be indebted to appellee for profits, under the authority of cases to which we will refer, an action might have been maintained against him by appellees for their share of them. By the terms of the partnership appellees were to furnish the goods, and DeLeon was merely to contribute his personal services, and the profits and losses were to be mutually divided. Does it make any difference that the notes sued on were given in liquidation of the portion of losses and merchandise which on settlement DeLeon was found to be due appellees, instead of their being given for profits? If there had been no settlement of the copartnership affairs; if there had been no new contract, it may be that appellees could not maintain an action for a contribution to liquidate the losses incurred, or for the recovery of their half of

them, if they had paid them all; though the cases to which we refer seem to imply that they might, and certainly hold that they could have recovered if such losses had been paid at his request or express consent. In such case, it might be said that the action was upon the original illegal contract. But by the voluntary settlement and adjustment of the partnership affairs, and the giving of the notes sued upon, the illegal transaction was completed and closed, and an entirely new undertaking entered into. . . ."

"These cases, we think, clearly show that a contract or undertaking to pay either profits or losses incurred in an illegal enterprise, can not be impeached by showing that the partnership enterprise in which such profits or losses accrued, was illegal; that they are collateral to, and not a part of, the illegal contract which had been by voluntary settlement fully completed and ended before the contract or undertaking upon which the suit is brought was entered into. Such contracts are, therefore, regarded by the courts as standing upon an altogether different footing from a renewal of, or a new security given for, an original illegal contract."

There are other assignments urged by appellant, but, in the view we take of this case, it will be unnecessary to consider them.

For the error indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*