### HEIDENHEIMER v. BEER et al.

(Court of Civil Appeals of Texas. Austin. Feb. 26, 1913. Rehearing Denied March 26, 1913.)

1. EVIDENCE (§ 171*)—BEST EVIDENCE—COLLATERAL FACT.

Where a telegram was not the basis of plaintiff's action, but was merely proof of a collateral fact, a copy thereof was admissible in evidence without first accounting for the original.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 460, 528; Dec. Dig. § 171.*]

2. GAMING (§ 32*) — ILLEGALITY — GAMING CONTRACTS.

While a contract for the future delivery of produce, etc., in which an actual delivery is not contemplated, but only payment of the difference between the contract price and value at an agreed time, will not support an action, a contract collateral thereto supported by a new consideration may be enforced if the original legal contract has been completed.

[Ed. Note.—For other cases, see Gaming, Cent. Dig. § 70; Dec. Dig. § 32.*]

3. GAMING (§ 34*)—ILLEGALITY—COLLATERAL CONTRACTS.

Though the original contract of alleged purchase and sale without an intent to deliver was illegal, an action may be maintained to recover an overpayment made through a mistake of fact in connection with the settlement of the transaction concerning the alleged pur-

ported sale and purchase by plaintiff to defend-
ant of cotton.

[Ed. Note.—For other cases, see Gaming, Cent.
Dig. § 72; Dec. Dig. § 34.*]

Appeal from District Court, Travis Coun-
ty; Geo. Calhoun, Judge.

Action by Henry Beer and others against
I. Heidenheimer, Jr. From a judgment for
plaintiffs, defendant appeals. Affirmed.

The nature and result of this suit are stat-
ed as follows in appellant's brief: "Ap-
pellees Henry Beer, Edgar Bright, J. Wil-
liam Barkdull, and C. Morgan, plaintiffs be-
low, brought this suit in the district court
of Travis county, Tex., Fifty-Third judicial
district, against I. Heidenheimer, Jr., and
L. Strassburger for a debt in the sum of
$1,500, with interest at the rate of 6 per
cent. per annum from March 18, 1910, on
account of an alleged overpayment ·by ap-
pellees to appellant and L. Strassburger
through a mistake of fact in connection with
the settlement of a transaction concerning
the alleged purchase ànd sale by appellees
for the account of appellant and the said L.
Strassburger of 300 bales of cotton on the
New Orleans Cotton Exchange, said transac-
tion having occurred during the month of
November, 1909, and such settlement having
been made shortly thereafter, by reason of
which it is alleged that appellant and the
said L. Strassburger are indebted to appel-
lees in the sum aforesaid. The defendant L.
Strassburger filed a sworn plea, denying
partnership in the transaction alleged in
plaintiff's petition, and upon such plea the
judgment of the court below was in his fa-
vor, from which neither party appeals. The
appellant answered by general demurrer and
special exception, setting up that the petition
of plaintiff sought to recover of defendant
on account of an alleged mistake in settle-
ment between said parties of an illegal and
void transaction, to wit, the purchase and
sale of cotton futures by plaintiffs as brok-
ers for defendant, and further by way of
general denial and by way of sworn plea
of failure and want of consideration and a
special defense that the transaction sought
to be alleged by plaintiffs was a gaming
contract or ' wager, and that as such was
contrary to good morals, sound public policy,
and the established law of the state of Tex-
as. The demurrers and exceptions contained
in the answer of defendant were by the court
overruled, to which appellant duly excepted.
Appellees filed a supplemental petition, con-
sisting of a demurrer to appellant's first
amended original answer and general deni-
al, and a plea that appellees had no notice
of the illegal character of the transaction, if
same was in fact illegal. The demurrer of
appellees was by the court overruled, to
which appellees then and there excepted.
The cause was tried before the court without
the intervention of a jury on the 27th day

of February, A. D. 1912, and was taken un-
der advisement until March 19, 1912, when
judgment was rendered in favor of appellees
and against appellant for the sum of $1,680,
with interest thereon from date of judg-
ment until paid at the rate of 6 per cent.
per annum, and costs of suit, such judgment
further being against plaintiffs and in favor
of L. Strassburger as to the suit against
him, from which judgment appellant has per-
fected his appeal."

The trial court filed the following findings
of fact and conclusions of law:

"Findings of Fact.

"The plaintiffs are, and for several years
past have continuously been, engaged in the
occupation of brokers on the New Orleans
Cotton Exchange in the city of New Orleans,
state of Louisiana, and do and have done
business there during said period under the
firm name of H. & B. Beer. The defendants
reside in the city of Austin, Travis county,
Tex., and during the same period of time
have been engaged in the wholesale grocery
and produce business in said city and in the
town of San Marcos, Hays county, Tex.

"On the 4th day of November, 1909, the
defendant Isaac Heidenheimer, Jr., by tele-
gram addressed to H. & B. Beer at New Or-
leans, directed plaintiffs as his agents and
brokers to buy for him 300 bales of cotton
of the average weight of 500 pounds a bale
on the New Orleans Cotton Exchange for de-
livery on such day in May, 1910, as the seller
might designate at a price not exceeding
15.27 cents per pound.

"Plaintiffs received and accepted said or-
der on the same day that it was transmitted,
and on said date and in compliance with the
directions contained in it purchased on said
exchange, as brokers for defendant Heiden-
heimer, 300 bales of cotton of said weight
for May, 1910, delivery at the price of 15.25
cents per pound. · Said price was the market
price and worth of said cotton on said mar-
ket on the date when said purchase was
made. Plaintiffs on said date advised de-
fendant Heidenheimer by wire and by mail
of their receipt of said order and of their
purchase of said cotton in compliance there-
with, and of the price at which said cotton
had been purchased.

"On November 11, 1909, defendant Heiden-
heimer directed and instructed plaintiffs to
sell 100 bales of the cotton which had been
purchased for him by plaintiffs as above
stated, and on November 17, 1909, defendant
Heidenheimer directed and instructed plain-
tiffs to sell the remaining 200 bales of said
cotton, which had been purchased for him as
above stated by plaintiffs. Plaintiffs, in com-
pliance with said directions on November 11,
1909, sold 100 bales of said cotton for the
price of 15.09 cents per pound on November
11, 1909, and they, in compliance with said

directions and instructions of November 17, 1909, sold the remaining 200 bales of said cotton for the price of 15.32 cents per pound on November 17, 1909, and did thereby finally execute and terminate the transaction or contract under which they had undertaken to represent defendant in the purchase and sale of said cotton.

"On November 11, 1909, plaintiffs mailed to defendant a written statement or account of said transaction, which statement by its terms showed that plaintiffs had purchased said 300 bales of cotton at 14.25 cents per pound, and had sold 100 bales thereof at 15.09 cents per pound. On November 17, 1909, plaintiffs rendered to defendant another written statement which showed that said cotton had been purchased at 14.25 cents per pound, and that the remaining 200 bales thereof had been sold at 15.32 cents per pound. Said statements also showed that said transaction or contract had realized for the defendant Heidenheimer a gross profit of $1,490, or a net profit of $1,445; said net profit being the amount of said gross profit less the sum of $45 commissions which were due by defendant to plaintiffs by the terms of the contract of agency under which plaintiffs acted as defendant's broker in the purchase and sale of said 300 bales of cotton.

"I find that the statements contained in said written accounts to the effect that said 300 bales of cotton had been purchased at 14.25 cents per pound were inadvertently made by plaintiffs through mistake. Plaintiffs in truth and in fact purchased said cotton at 15.25 cents per pound as they had at the time of the purchase advised defendant.

"I further find that because of said mistake the account of defendant I. Heidenheimer, Jr., with plaintiffs was credited in said transaction with a net profit of $1,445, whereas, in truth and in fact, it should have been charged with a loss of $55. On March 16, 1910, the defendant Heidenheimer directed the plaintiffs to send him all moneys due him by plaintiffs, and plaintiffs did, in compliance with said direction and request, on March 18, 1910, pay to said Heidenheimer all moneys shown to be due him by the plaintiffs' books. Said payment exceeded the sum of $2,000, and the sum of $1,500 of said payment was made by plaintiffs to said defendant through inadvertence and mistake of fact arising out of said mistaken entry on their books, and was without consideration. Because of said error and mistake in entering on plaintiffs' books the purchase price of said cotton at 14.25 cents per pound instead of 15.25 cents per pound, plaintiffs have paid to the defendant Heidenheimer the said sum of $1,500 in excess of the real amount which should have been paid by plaintiffs to defendant in settlement of the transaction between them.

"I further find that the transactions above detailed were all individual transactions of the defendant Isaac Heidenheimer, Jr., and the plaintiffs, and the defendant L. Strassburger was not a party to or interested in same.

"The New Orleans Cotton Exchange is an institution through the medium of which cotton and other agricultural products are purchased and sold. Many of the transactions which take place on said Exchange, and which take the form of purchase and sale of cotton or other agricultural products, are not transactions in which there is any intention on the part of the buyer to demand delivery, or on the part of the seller to actually deliver the commodity or product intended to be sold. Many other transactions which take place on said Exchange are bonâ fide sales of cotton or the other products purporting to be sold in which the buyer actually expects to demand delivery and does demand delivery of the product bought, and the seller expects to deliver and does deliver to the buyer such product. The defendant Isaac Heidenheimer, Jr., in giving the order to purchase said 300 bales of cotton, intended to embark in a speculative or wagering transaction, and did not intend to demand actual delivery of any cotton under the contract which he directed plaintiffs to make for him, and said transaction of purchase was merely colorable so far as said defendant is concerned, and was but a cloak for a wager by him on the future market price of cotton.

"The plaintiffs executed said order of the defendant Heidenheimer by purchasing said 300 bales of cotton from other brokers on the New Orleans Cotton Exchange. The brokers from whom said cotton was purchased acted for an undisclosed principal, and there is no evidence showing whether said undisclosed principal intended to actually deliver said 300 bales of cotton or not, except the fact that he had the right, under the terms of the contract, to actually deliver it.

"The plaintiffs had, previous to November 4, 1909, acted as the agents and brokers of the defendant Heidenheimer in numerous other transactions, and in none of said other transactions had the defendant Heidenheimer ever demanded actual delivery of any of the commodities which he in said transactions undertook to purchase. It is usual and customary for merchants in Texas in certain contingencies, who buy and sell cotton for actual delivery to 'hedge' such spot transactions by purchases of future contracts on the New Orleans Cotton Exchange, and the fact that a purchaser on said Exchange of such a contract does not demand actual delivery of the cotton purchased at the maturity of the contract does not necessarily mean or indicate that such purchaser did not intend at the inception of the contract to demand delivery of the cotton purchased at

the maturity of the contract. The defendant Heidenheimer was not in fact engaged in purchasing cotton in Texas for actual delivery, but the plaintiffs had no notice of the fact that he was not so engaged, and they did not know when they executed Heidenheimer's order of November 4, 1909, that it was not Heidenheimer's intention to demand actual delivery of the cotton which he by said order directed them to purchase for his account.

### "Conclusions of Law.

"(1) There is no evidence which would warrant a judgment against the defendant L. Strassburger for any amount, and judgment has accordingly been rendered in his favor.

"(2) I conclude that under the law a broker or agent who makes for his principals a wagering contract, and who knows that such contract is a wagering contract at the time of said transaction, is particeps criminis in the transaction and cannot lawfully maintain any action for the commissions due him in said transaction or any other action thereon which would result in the enforcement of such contract or any part thereof. But a broker who makes for his principals a contract for the sale of property, and who does not know that such contract is merely a colorable transaction and a cloak and device for a wager, is not particeps criminis in the transaction and can enforce his rights growing out of the transaction to the same extent that he could do if such transaction were not contaminated with the vice of illegality. I conclude that the cause of action of the plaintiffs falls under the latter class of cases, and that the plaintiffs are not affected with knowledge of the undisclosed and unknown illegal intention of the defendant Heidenheimer.

"(3) A contract for the future delivery of cotton, in which an actual delivery is not contemplated, but only a payment of the difference between the contract price and the value of the article at the time agreed on, will not support an action. If, however, the contract has been completed, another contract collateral thereto and supported by a new consideration may be enforced. Floyd v. Patterson, 72 Tex. 202, 10 S. W. 526, 13 Am. St. Rep. 787. The cause of action of the plaintiffs in substance is that they have paid to the defendant Heidenheimer the sum of $1,500 through and as a consequence of an inadvertent and a mistaken entry on their books, and that the said payment was made by them to him without consideration. When such a payment is made, the law implies a promise to repay, and therefore the cause of action of the plaintiffs in no wise depends upon or involves an enforcement of the original contract for the purchase of the 300 bales of cotton. It is entirely collateral to the latter contract, and the latter contract had been fully executed and terminated prior or to the occurrence of the facts on which the plaintiffs' cause of action depends. For this reason, I conclude that the plaintiffs are entitled to recover of the defendant Heidenheimer the sum of $1,500, together with interest thereon at the rate of 6 per cent. per annum, from the date of the payment of said money by plaintiffs to Heidenheimer to the date of judgment."

Fiset & McClendon and D. K. Woodward, Jr., all of Austin, for appellant. Farrar, Jonas, Goldsborough & Goldberg, of New Orleans, La., and Gregory, Batts & Brooks, of Austin, for appellees.

KEY, J. (after stating the facts as above). Appellant's first assignment of error complains because the trial court overruled his demurrer to appellees' petition, the contention being that the petition shows upon its face that appellees were seeking to enforce or obtain a benefit resulting from an illegal contract between the parties. The right of recovery asserted in the petition is not founded upon the contract referred to, but is based upon the fact that, on account of a mistake in bookkeeping, appellees had paid to appellant a certain sum of money that they did not owe him, and to which he was not entitled. The case is not analogous to Seeligson v. Lewis, 65 Tex. 215, 57 Am. Rep. 593; Railway Co. v. Johnson, 71 Tex. 619, 9 S. W. 602, 1 L. R. A. 730; Logan v. Norris, 100 Tex. 228, 97 S. W. 820; Burney v. Blanks, 136 S. W. 806, and other cases cited by counsel for appellant. And the assignment referred to is overruled.

[1] By the second assignment complaint is made because the court, over appellant's objection, permitted appellees to read in evidence a copy of a certain telegram, without showing an excuse for the failure to produce the original. The telegram referred to was not the basis of the plaintiffs' suit, but was merely proof of a collateral fact, and therefore it was not necessary to account for the original. Gooch v. Addison, 13 Tex. Civ. App. 82, 35 S. W. 83; Smith v. Eckford (Sup.) 18 S. W. 210; Railway Co. v. Lynch, 99 S. W. 160. "Evidence relating to a matter which does not form the foundation of the cause, but is collateral to the issue, does not properly fall within the best evidence rule, and, although secondary in its character, cannot be excluded on the ground that primary evidence was obtainable." Cyc. vol. 17, p. 469. Besides, if error was committed in the matter complained of, it was rendered harmless on account of other testimony properly admitted, and not objected to.

The third assignment challenges the finding of the trial court to the effect that appellees had no notice of the fact that appellant was not engaged in purchasing cotton in Texas for actual delivery, and that it was not his intention to demand actual delivery

of the cotton purchased by appellees for him; the contention being that that finding is not supported by and is contrary to the testimony. We do not deem it necessary to decide that question, because, if it be conceded that appellees had notice of the fact that appellant did not intend, to demand or accept delivery of the cotton and intended, as he testified, merely to speculate or gamble in cotton futures, such notice would not militate against appellees' right to maintain this suit. Floyd v. Patterson, 72 Tex. 202, 10 S. W. 526, 13 Am. St. Rep. 787; DeLeon v. Trevino, 49 Tex. 88, 30 Am. Rep. 101; Pfeuffer v. Maltby, 54 Tex. 454, 38 Am. Rep. 631; Haswell v. Blake, 90 S. W. 1127; Smith v. Booty, 49 Tex. Civ. App. 628, 109 S. W. 979; Beer v. Landman, 88 Tex. 455, 31 S. W. 805.

[2] In Floyd v. Patterson, supra, the Supreme Court held that a broker who was particeps criminis in a wager contract on the future price of wheat, and who had collected the winnings for his principal, could be compelled, at the suit of the principal, to pay over the winnings; and the following rules of law were announced: "A contract for the future delivery of stocks, produce, or other merchandise in which an actual delivery is not contemplated, but only a payment of the difference between the contract price and the value of the article at the time agreed on, will not support an action. If, however, the contract has been completed, another contract collateral thereto and supported by new consideration may be enforced. The law implies a promise on the part of the agent to pay over to his principal money received for him, and the illegality of the contract, by virtue of which the money was collected, affords no defense."

[3] The rulings made in that case are conclusive of the rights of the parties in this case, and settle the law in appellees' favor, even though they may have known of appellant's intention to violate the law, and may, as brokers, have aided him in so doing. They are not suing to enforce that contract or to secure any right resulting to them therefrom. They are suing to enforce appellant's implied promise to refund to them money paid to him by mistake, and to which he had no right, either in law or morals.

With some exceptions, created for reasons of public policy, the courts are open to every one who has a complaint to make; and it is immaterial whether he be Jew or Gentile, Christian or pagan, saint or sinner. Therefore, while the courts will not aid in the enforcement of a contract that violates the written law of the state, or contravenes public policy, the mere fact that it incidentally appears that a plaintiff has thus offended will not defeat his right to a recovery, which otherwise he would be entitled to. Sinner though he may be, the law will redress his wrongs, though his adversary be a saint (which, however, is not the case in this instance). Sainthood is not a prerequisite to entering the portals of the courts; and if it were few litigants (and perhaps no lawyers) would enter therein, and the judges could go fishing as often as they heard the call of the waters. Nor will it be amiss to say (as probably will be said) that if such test should be applied to the bench, many judges (including this writer) would, be "recalled"; for it is here and now frankly conceded that the adoption of such test would create more vacancies than the bar could furnish saints to fill.

We conclude that no error has been shown, and the judgment is affirmed.

Affirmed.