### EDWARDS v. ROBERTS. (No. 1663.)

(Court of Civil Appeals of Texas. Amarillo. May 5, 1920. Rehearing Denied May 26, 1920.)

1. **Contracts ⬦221(3)—Promise to pay if pending arrangement to "buy out" bank was perfected construed.**

Where negotiations were pending for the purchase of a majority of the stock of the bank of which plaintiff was cashier, and defendant and another contracted to pay plaintiff an amount equal to his salary for the term of his contract "in case the pending arrangement is perfected by which the gentlemen organizing the F. bank and their associates buy out the A. bank and you retire from the company," the condition was satisfied by the purchase of a majority of the stock; "buy out" not requiring a transfer of the assets of the bank to another bank and its obliteration as an entity.

2. **Contracts ⬦102—Personal contract of cashier not invalid because of bank's lack of power.**

Where to facilitate the purchase of a majority of the stock of the bank of which plaintiff was cashier the cashier of a competing bank and a person interested in a third bank agreed to pay plaintiff an amount equal to his salary for the period of his existing contract, and plaintiff refused to accept the obligation of the two banks, the lack of power of defendant's bank to make such a promise did not affect defendant's liability on his promise, though plaintiff knew the money probably would ultimately be paid by the bank.

3. **Banks and banking ⬦102—Bank not cashier's undisclosed principal, where other party refused bank's obligation.**

The bank of which defendant was cashier was not the undisclosed principal in a contract signed by him in his own name, where plaintiff, the obligee, refused to accept the bank's obligation, but demanded the personal obligation of the signers as the principals thereon.

4. **Principal and agent ⬦132(1) — Cashier's contract in his own name, after refusal to accept bank's contract, binding on him.**

If the bank of which defendant was cashier was the disclosed principal in a contract signed by him in his own name, the presumption was that the other party elected to look to defendant, and not to the principal, especially where there was positive evidence that the other party refused to accept the bank as the obligor.

5. **Monopolies ⬦23—Contract in consideration of retirement of bank cashier to prevent organization of new bank enforceable.**

Where, to induce certain persons to refrain from organizing a new bank in a city having three banks, they were persuaded to purchase a controlling interest in one, of which plaintiff was cashier, and to facilitate such purpose defendant and another agreed to pay plaintiff an amount equal to his salary under an unexpired contract, the contract with plaintiff was valid and enforceable even though the acts of the banks amounted to an illegal combination to prevent the establishment of a new bank.

6. **Monopolies ⬦12(1)—Facilitating purchase of interest in bank to discourage organization of new bank not unlawful.**

For persons interested in competing banks to advise and induce officers, directors, and stockholders in one of them to sell their stock to men who were seeking to organize a new bank was not an unlawful combination, though they were all interested in keeping out a new bank, where there was no agreement that the old stockholders should not start a new bank or should assist in preventing the organization of another bank.

---

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. Contracts ⬅═202(2) —Though defendant's promise was made in hope that new bank would not be organized, plaintiff not precluded from organizing one.**

Though defendant and another, in facilitating the purchase of a majority of the stock of the bank of which plaintiff was cashier by persons contemplating the organization of a new bank, were acting in the hope that there would be no new bank, where, to facilitate such purpose, they promised to pay plaintiff's salary under an unexpired contract, they were not relieved of liability because plaintiff organized a new bank, where there was no agreement that he should not do so.

**8. Contracts ⬅═349(1)—In action against cashier, evidence of action of directors inadmissible.**

In an action against a bank cashier on a contract executed in his own name, which he claimed was the contract of the bank and as such ultra vires, where it appeared that plaintiff refused to accept the bank's obligation instead of defendant's own obligation, evidence that the directors instructed defendant to close the contract, and stated that the bank would pay the money thereunder, was inadmissible, as it could not affect plaintiff's rights.

Appeal from District Court, Grayson County; F. E. Wilcox, Judge.

Action by Barlow Roberts against F. Z. Edwards. Judgment for plaintiff, and defendant appeals. Affirmed.

Wolfe & Freeman, of Sherman, for appellant.

G. P. Webb and Wood, Jones & Hassell, all of Sherman, for appellee.

HUFF, C. J. Appellee, Roberts, sued appellant, Edwards, on a contract, which was in the nature of a proposition submitted to Roberts and accepted by him. The proposition is as follows:

"Sherman, Texas, February 2, 1918.

"Mr. Barlow Roberts, Sherman, Texas—Dear Sir: In case the pending arrangement is perfected by which the gentlemen organizing the Farmers' & Merchants' State Bank and their associates buy out the American Bank & Trust Company, and you retire from that company, each of us will see and guarantee that you are paid the sum of thirteen hundred and seventy and no/100 ($1,375.00) dollars, aggregating the sum of twenty-seven and fifty and no/100 ($2,750.00) dollars, each of us guaranteeing one-half of the amount, provided, however, that all the salary you may receive from the American Bank & Trust Company from February 1, until the perfection of the arrangement by which that bank makes sale as aforesaid, shall be credited on said sum of twenty-seven hundred and fifty and no/100 ($2,750.00) dollars, and provided further that if the contemplated Land Bank is organized at Sherman and you are given a position in it, which is satisfactory to you and accepted by you, then you will return to us in a lump sum an amount equal to two hundred and fifty and no/100 ($250.00) dollars per month, from the time your employment begins with the bank to the end of the year 1918.       [Signed]     F. C. Dillard.
"F. Z. Edwards."

The allegations and proof show that F. C. Dillard paid his $1,375 in a lump sum after the purchase mentioned in the proposition, and that F. Z. Edwards paid only two months $250, and the suit is against him for the balance of that sum, $1,125. The Land Bank mentioned in the proposition was not organized, and Roberts obtained no employment therefrom. A month or so thereafter, however, he organized and started a bank in the city of Sherman, of which he was president, and from which he received a salary. In January and February, 1918, there were three banks in the city of Sherman; the Merchants' & Planters' Bank, the Commercial National Bank, and the American Bank & Trust Company. At that time several gentlemen, Knowles S. Loving, Lee Simmons, Leslie, and others, were endeavoring to organize a bank, and had applied for a charter therefor, named the Farmers' & Merchants' State Bank. Their application for a charter had been granted, but no charter in fact had issued. The three banks organized at that time were of the opinion that there was not room in the city of Sherman and tributary territory for a fourth bank, and endeavored to defeat the granting of a charter for the fourth bank, in which they were unsuccessful. Negotiations appear to have been instituted with the gentlemen seeking to organize the new bank, to the effect that they should buy stock in the American Bank & Trust Company. It resulted in about the condition that those gentlemen agreed to do so, provided they could obtain a controlling interest in the bank, and that the men who were named as directors and officers in the proposed new bank should be directors in the American Bank & Trust Company. The appellee, Roberts, was cashier of the American Bank & Trust Company, and had a contract with that bank for the year 1918, at a salary of $3,000 for the year, or $250, payable each month. The purpose of buying the stock in the bank was to make Mr. Leslie president of the American Bank & Trust Company, Loving, cashier, and Simmons, an active vice president, with other parties on the board of directors, and it seems to have effected this purpose. The proposition above set out was made to Roberts. Mr. Dillard and his law partner, Mr. Hilton Head, who were active in the negotiations, owned stock in the American Bank & Trust Company, which they were desirous of selling, and were also the attorneys and directors in the Merchants' & Planters' Bank. The appellant, Mr. Edwards, was the cashier of the Commercial National Bank. There seems to have

been a contract drawn in which the two banks, Merchants' & Planters' Bank and the Commercial Bank, were to guarantee the salary of appellee, provided he would retire. Mr. Roberts declined to accept their guarantee, on the ground that it would have to be ratified by the board of directors of the two banks, and that he might be accused of trying to create a trust, but he accepted the individual obligation of Mr. Dillard and of Mr. Edwards. The facts are sufficient to raise the issue that Roberts knew that the money to be paid him would likely be advanced by the two banks named to Dillard, and Edwards, and the facts are sufficient to show that Edwards did obtain the money paid by him, and expected to be paid by him, from the Commercial National Bank. The matter of Roberts starting another bank was discussed, but there was no agreement that he should not do so. The evidence would indicate that he represented that he expected to leave Sherman and possibly go to Oklahoma. Further than the circumstances above detailed, we find no agreement between the banks that the retiring officers should not start a fourth bank. The old officers of the American Bank & Trust Company sold their stock and retired from that bank, except Mr. Thompson, who was the active vice president. The gentlemen who were seeking to organize the new bank purchased about 1,400 shares of the stock of the American Bank & Trust Company, and its entire stock consisted of 2,000 shares. We believe this will be a sufficient statement of the facts and issues to discuss the propositions presented by appellant.

The trial court instructed a verdict for the appellee for the amount sued for, upon which judgment was rendered, and this action is assailed on several grounds as fundamental error, and by other special assignments.

[1] The first proposition presented is that, the promise to pay being upon condition that Loving, and his associates, engaged in organizing the Merchants' State Bank, would buy out the American Bank & Trust Company, and the facts showing that they did not buy out said bank, such promise was unenforceable. The contract reads:

"In case the pending arrangement is perfected, by which the gentlemen organizing the Farmers' & Merchants' State Bank, and their associates, buy out the American Bank & Trust Company, and you retire from that company."

The contract was in the form of a proposition by F. C. Dillard and F. Z. Edwards to appellee, Roberts, which he accepted "The pending arrangement" was that, of the 2,000 shares of the American Bank & Trust Company, the gentlemen organizing the proposed bank should purchase a majority of the shares. Leslie was to be president, Loving, cashier, Simmons, active vice president, and others of their associates, directors.

Roberts, who was cashier, should sell his stock and "retire from that company" (American Bank & Trust Company). "Buy out" we think referred to the thing which there was yet then pending, arrangements to be perfected; that is, the controlling stock of the American Bank & Trust Company. This arrangement was perfected. The gentlemen who were organizing the Farmers' & Merchants' State Bank became the officers of the American Bank & Trust Company, and appellee retired from that company. If, as contended by appellant, "buy out" is to be construed as buying the entire assets, change the name of the bank, move into other quarters, or, in other words, obliterate the American Bank & Trust Company, as an entity, then the clause that Roberts retire "from that company" was a useless provision. There would have been nothing to retire from. The significance of this clause clearly implies, after perfecting the then pending arrangements; the old bank would still be in existence, and the appellee as a stockholder, officer, and cashier should retire, and upon doing so he should not lose his salary contract, but the two gentlemen making the proposition would guarantee to him that they would pay it. This contract, read in the light of the circumstances then surrounding the parties, leaves no ground, as we conceive it, to doubt what was to be bought and what the proposers were guaranteeing. Roberts was not to lose the value of his contract as a cashier for the year, and they were guaranteeing him against loss in case the controlling interest placed Loving in his place by the arrangement which was then pending. By acquiring a majority of the stock such proportion of the title to the assets, franchises, name, and business were transferred to the men who were proposing the new organization. In that sense they purchased or bought out a controlling interest in the company. The company, as a company, without the consent of the stockholders, could not sell their stock or their interest in the bank. It is therefore manifest "buy out" as used in connection with the pending negotiations did not mean a transfer of the entire corpus of the concern, but only the interest therein then pending on negotiations. It is evident the contract did not contemplate a transfer to a new organization which might continue a similar business without incurring the liability of the old; that was not the arrangement then pending. The words "buy out" are qualified, both by the clauses preceding and following them, which are entitled to consideration in arriving at the meaning of the parties, as expressed in the contract. Without incorporating in the contract the pending arrangement, it referred to it in such way as it may certainly be known and ascertained, and when it is ascertained there remains no doubt as to the meaning of the term as used in the contract.

[2] A proposition is presented "that an agreement by a national bank to pay money to induce a cashier of another bank to give up his position is illegal, and the promise of appellant, growing out of such illegal contract, is void." The contract on its face to pay to appellant for his services shows to be by individuals and not by banks. The evidence shows that Dillard and his partner, Head, were stockholders in the American Bank & Trust Company, and were desirous of selling their stock therein. They were also attorneys and directors in the Merchants' & Planters' Bank. Edwards was the cashier of the Commercial National Bank, and, as we take it, had no interest in the American Bank & Trust Company. There is some evidence that would authorize the finding that his part of the obligation would be, and it was contemplated that it should be, paid out of the funds of the Commercial National Bank, and that Roberts knew that fact. Mr. Dillard paid his half of the amount agreed upon at once and upon the completion of the transfer. There is no evidence where he obtained the money— whether he advanced it from his individual funds or from the funds of the Merchants' & Planters' Bank. There is evidence which would lead to the inference that Roberts had reason to believe that the money would ultimately be paid by the two banks. He, however, refused an obligation from the two banks because he says the directors would have to pass on it to make it legal, and because he was afraid of being accused of trying to form a trust, that he expected to get his money from Mr. Dillard and Mr. Edwards, and that he did not know where they would get the money to pay. The evidence will also warrant the finding that the bank sought to defeat the proposed organizers in obtaining a charter for a new bank. The instrument in question does not purport to obligate either bank or to be the act of either bank. If the banks had no power to execute such an obligation, the contract in question would not be affected, for it was not the obligation of the banks, but the personal obligation of the persons signing it.. We fail to see any reason why the rule of ultra vires the power of the banks should have application in his case. The obligation does not purport to be signed by the agents for the banks; they did not purport to bind any one but themselves. The mere fact that Roberts may have believed or have known that the individuals would get the money from the banks we do not think should affect the matter. It was no concern of his where they obtained the money so long as their obligation was with him to pay him the sum named.

[3, 4] Appellant also in this connection presents a proposition to the effect that his signature was for and on behalf of the bank. We do not think the jury would have been authorized to find that the Commercial National Bank was the undisclosed principal in the contract. The appellee refused to accept the bank's obligation, but demanded the personal obligation of the signers as the principals thereon. If, however, the evidence in this case is sufficient to have disclosed the bank as the principal in the contract, then the rule established in this state by the Supreme Court, in Heffron v. Pollard, 73 Tex. 96, 11 S. W. 165, 15 Am. St. Rep. 764, would apply, which is:

"If * * * the principal be disclosed, and the face of the writing shows that the agent is bound, it is presumed that the other party has elected in the contract * * * to look to the agent, and the principal is not liable upon it."

In this case we have not only the presumption, but the positive evidence, that the appellee would not accept the banks as the obligors. The cases cited by appellant of Fidelity, etc., v. Bank, 48 Tex. Civ. App. 301, 106 S. W. 782, Hanauer v. Woodruff, 15 Wall. 439, 21 L. Ed. 224, and Armstrong v. Toler, 11 Wheat. 258, 6 L. Ed. 468, we do not think applicable to the propositions here urged, and now under consideration. If it should be determined that the contract by which Roberts agreed to retire as cashier was part of a scheme or combination to form a trust in violation of the statutes, the two cases last cited would bear upon the question in ascertaining the validity of the contract in question.

[5] A proposition is presented:

"A contract having for its purpose the prevention of the establishment of another bank in a city is illegal and void, as being in restraint of instrumentalities of trade and as tending to destroy competition."

The proposition is not regarded as a correct proposition of law. If the contract fell under the class denominated as a combination of capital, skill, or acts, by two or more persons, etc., for the purposes of lessening competition in the aides to commerce, it might be a trust. If the acts of the three banks, the Merchants' & Planters' Bank, the Commercial National Bank, and the American Bank & Trust Company, were sufficient to establish a combination to enter into an agreement to keep out a fourth bank in the city of Sherman, it would not necessarily follow that the contract in question was void. Appellee had a valid contract with the American Bank & Trust Company for a year's salary as a cashier. This contract was legal, which he could enforce. To further the purpose of the parties buying out the stock of certain stockholders, and to place another man in as cashier, the proposition was to have appellee retire therefrom. If he should do so, his contract being an enforceable one, they doubtless recognized that he should be compensated. They agreed, therefore, to pay him a consideration for his contract. The

consideration for the contract was not illegal, and the appellee shows he was not in any way combining with either or all of the said parties; he simply sold out, and they bought. They, it occurs to us, set up their illegal combination to defeat a valid contract based on a legal consideration. Appellant, by his contract, procured from appellee the surrender of a valid contract, in consideration of the execution and obligation which appellant now says he executed for an illegal purpose.

The case of Armstrong v. Toler, 11 Wheat. 258, 6 L. Ed. 469, cited by the appellant, was a case where goods had been consigned to Toler, belonging to Armstrong and others. The goods were shipped during the war with Great Britain in violation of the law. The goods were delivered to Toler as agent of Armstrong on a stipulation to abide the event of the suit, Toler becoming liable for the appraised value. Armstrong's goods were afterwards delivered to him on his promise to pay Toler his proportion for which Toler might be liable should the goods be condemned, and, the goods having been condemned, Toler paid their appraised value, and brought suit to recover from Armstrong. Armstrong resisted the demand on the ground that the contract was made upon an illegal consideration. The headnotes of that case give the rule as follows:

"But, if the promise be entirely disconnected with the illegal act, and is founded on a new consideration, it is not affected by the act, although it was known to the party to whom the promise was made, and although he was the contriver and conductor of the illegal act."

Chief Justice Marshall said in the course of the opinion, after discussing several cases:

"So Toler's knowledge of the illegal transactions of Armstrong, and that his money was advanced to procure the delivery of goods which had been illegally imported, could not vitiate a contract to repay that money." Floyd v. Patterson, 72 Tex. 202, 10 S. W. 526, 13 Am. St. Rep. 787; Russell v. Kidd, 37 Tex. Civ. App. 411, 84 S. W. 273; Smith v. Booty, 49 Tex. Civ. App. 628, 109 S. W. 979; also note, 23 L. R. A. (N. S.) at page 482, where several Texas cases are cited.

The facts in this case show, if there was any combination, the appellee was not in it, or expected to be benefited by the fruits of the combine. He sold and they purchased his right, and he surrendered the legal claim as a consideration for the obligation sued upon. Whatever the purpose of the banks was, the appellee was not a participant therein; his money, skill, or acts were not united with the others, but held in severalty by him. Their illegal purpose could not make his rights, lawfully acquired, illegal.

[6] We are not inclined to think there was a combination such as denounced by the statute. It may be conceded that all three of the banks were interested in keeping out a fourth bank. So long as they did no illegal act, the act would not be denounced as a trust. They do not appear to have combined their capital, skill, and acts to prevent the establishment of another bank. At most, they advised and induced the old officers, directors, and stockholders in the American Bank & Trust Company to sell their stock to men who were seeking to organize a fourth bank. When that was accomplished it appears to have satisfied the ambition of those gentlemen, and, in so far as the record shows, they thereafter held their interest and their bank separate from the two other banks and were competitors. There was no agreement that the old stockholders should not start a new bank or assist in preventing the organization of another. Gates v. Hooper, 90 Tex. 563, 39 S. W. 1079; Schlag v. Johnson, 208 S. W. 369.

[7] It is asserted that the appellee having knowledge that the money which was promised on the obligation was to prevent a fourth bank and the organization of a fourth bank by him absolved appellant from the contract to pay the money. There is no such promise in the contract, and neither do we think there is sufficient evidence to find that there was a verbal agreement to that effect. Appellee says they evidently thought he could not start a new bank. It is doubtless true that the arrangement was made in the hope that there would not be another bank. We do not think the evidence sufficient to show there was a breach of an express or implied contract by the appellee, such as would defeat him in his action.

[8] The remaining assignments present substantially the proposition above discussed, and for the reasons heretofore given are overruled. We think there was no error in excluding the evidence of Judge Hare as to the action of the board of directors of the Commercial National Bank, directing Edwards to close a contract with Roberts, and that the bank would pay the money. We do not think such action could have affected the appellant's rights under his contract.

The judgment will be affirmed.