## DAVID RUSSELL v. GEORGE W. KIDD ET AL.

### Decided December 9, 1904.

**1.—Gambling Contract—Principal and Agent.**

Though the courts will enforce no wagering contract nor render any judgment based upon its terms, when such contract has been executed and its fruits paid to the agent of the winner, the agent can not hold them as against his principal.

**2.—Same—Cotton Futures.**

One who purchased cotton futures through a firm of brokers by whom sale was afterwards made for a profit, could recover from them the proceeds realized, though the transaction was found to contemplate no actual delivery and to be a mere wagering contract.

Appeal from the District Court of Jefferson. Tried below before Hon. A. T. Watts.

*Byars & Byars,* for appellant.—Appellees are not entitled to the defense of gambling transaction, having acted as brokers and the agents of appellant in placing his orders for cotton for future delivery, and are liable to appellant for the profit derived from the sale of cotton future contracts, purchased and sold for appellant by appellees, as his agents and brokers, for a commission. Floyd v. Patterson, 72 Texas, 205; Roby v. West, 4 N. H., 290; Gilliam v. Brown, 43 Miss., 641; Simpson v. Blass, 2 Taunt., 246; Owen v. Davis, 1 Bailey, 315.

*Lanier, Martin & O'Fiel,* for appellees.—The evidence in this cause fully supports the findings both of fact and of law as made by the trial court. Willis Bros. v. Morris, 63 Texas, 460; Mathew v. Oberthier, 50 Texas, 329; Sealingson v. Lewis, 65 Texas, 215; Sanger v. Miller, 62 S. W. Rep., 425; Rayner Cattle Co. v. Bedford, 91 Texas, 642, 650; Beer v. Landman, 88 Texas, 450.

GILL.—ASSOCIATE JUSTICE.—David Russell sued the firm of Moore, Hathaway & Co. to recover the amount of a draft drawn by the firm in his favor for $883 which was dishonored by the drawee.

The defendant, B. E. Moore, one of the members of the firm, failed to answer and judgment by default was rendered against him. The other defendants answered by general demurrer, and further that they were not liable on the draft sued on because it was given in settlement of a gambling transaction consisting of a purchase and sale of cotton futures in which no actual delivery was contemplated.

A trial before the court without a jury resulted in a judgment for the defendant firm and the answering members thereof.

The trial court found as a conclusion of fact that the transaction out of which the draft grew was between the defendant firm and plaintiff in which no delivery was intended and in which it was understood that the defendant firm was to become liable to plaintiff and to settle only according to difference in price.

The court further found that the contract, though made under the rules of the New Orleans Cotton Exchange and requiring actual delivery at maturity, was in fact a device to cover a gambling transaction and was therefore unenforceable.

By appropriate assignment the plaintiff, who is appellant here, assails the trial court's fact conclusions and his conclusions of law as well.

The general history of the transaction is as follows: The defendant firm was engaged in the brokerage business at Belmont, Texas, buying and selling cotton and grain on commission. B. E. Moore, one of the members of the firm, was a member of the New Orleans Cotton Exchange. The rules of the last named concern provided that only members could operate on the floors of the exchange and that all contracts for future delivery must provide for the actual delivery of goods bought when the contract matured.

The plaintiff authorized the firm through its representative, B. E. Moore, to purchase for him a certain number of bales of cotton to be delivered at a named time in the future. Plaintiff placed with the firm the necessary margin of earnest money. The firm became the agent of plaintiff for a stipulated commission. Moore, acting according to these instructions, made the purchase on the New Orleans Cotton Exchange. Some time thereafter, but prior to delivery day, Moore, without authority from plaintiff and without his knowledge, sold plaintiff's contract at a profit of $883 over what it cost plaintiff. This sale of plaintiff's contract was also made on the New Orleans Cotton Exchange. Later still, but prior to delivery day, plaintiff notified his brokers, the defendants, that he wished his contract sold. They then reported to him the sale they had made and sent him the draft in question to cover his profits, which they had actually collected and were holding. The bank on which the draft was drawn refused to honor it because defendants had no funds on deposit with it. Plaintiff then brought this suit. The facts thus far are undisputed.

We may concede that the contract made on the floor of the New Orleans Cotton Exchange by the defendants for plaintiff was a gambling contract, yet the judgment can not stand. It is settled law that the courts will not enforce gambling contracts but will leave the parties where they are found. But it has been determined with equal clear-

ness that the fruit of a gambling venture is property about which the parties will be allowed to litigate. The courts will enforce no wagering contract nor render any judgment based upon its terms. But when a wagering contract has been executed and its fruits paid to the agent of the winner the agent can not hold it against his principal. Floyd v. Patterson, 72 Texas, 205, and authorities cited.

Applying these rules to the case at hand it becomes clear that the judgment of the trial court is wrong. The plaintiff hired defendants as brokers to make a contract for him. They did so for a stipulated wage. They sold his contract for a profit which they now hold. The court in determining this controversy is not called on to inquire into the nature of the contract thus sold. The inquiry stops when it is ascertained that defendants have collected money for plaintiff which they refuse to pay over.

The judgment of the trial court is reversed and judgment here rendered that plaintiff recover of defendant firm and the individual members thereof the amount of the draft with interest and costs.

*Reversed and rendered.*

Writ of error refused.