# BOND ET AL., PARTNERS AS BOND & BUTTFIELD, *v.* HUME.

## CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 119.  Argued February 2, 1917.—Decided March 6, 1917.

An independent sovereignty will not lend the aid of its courts to enforce a foreign contract where such action would be repugnant to good morals, lead to disturbance or disorganization of its municipal laws, or otherwise violate its public policy.

The courts of one sovereignty, however, will not refuse effect to the principle of comity by declining to enforce contracts which are valid under the laws of another sovereignty unless constrained thereto by clear conviction of the existence of the conditions justifying that course.

Since the definition of public policy lies peculiarly with the law-making power, the policy indicated by its enactments must control comity in the enforcement of foreign contracts.

The foregoing principles apply to the several States, under the common obligations of the Constitution, more strongly than to sovereignties which are independent of one another.

Contracts between citizens of New York and a citizen of Texas, executed in New York, for the purchase and sale of cotton for future delivery upon the New York Cotton Exchange, pursuant to its rules, etc., *Held* valid under the New York law and under the common law.

Contracts with brokers for the purchase and sale of cotton for future delivery, under and subject to the rules of a cotton exchange, which rules permit the substitution in delivery of grades other than that upon which the contract price is based and provide that in such case the price shall be readjusted according to the rates of the exchange "existing on the day previous to the date of the transferable notice of delivery," are not necessarily to be regarded as violating the policy evinced by the Texas "Bucket Shop Law," Rev. Crim. Stats. 1911, c. 3, Arts. 538, 539, when it is alleged and admitted that actual delivery of the goods was *bona fide* intended by the parties;

Nor are they repugnant to the public policy of Texas as manifested by other statutes of the State or by decisions of its courts.

The general provisions contained in Arts. 545 and 546 of the Texas statute, *supra,* and which shift the burden of proof in particular criminal prosecutions under it, afford no ground, in a civil case brought to enforce a contract, for holding that the averments of the petition must be taken to be untrue.

Whether the mere existence of a state statute punishing those who contract for the sale or purchase of goods or securities to be delivered in the future, not intending in good faith that delivery shall be made, could constitutionally justify the courts of that State, or in any event the courts of the United States exercising jurisdiction therein, in declining to enforce like contracts when made under like circumstances in another State and valid where made,—are questions upon which the court expresses no opinion.

"THIS action was instituted in the United States Circuit Court for the Western District of Texas, at Austin, on the 23rd day of February, 1910, by Allen Bond and William J. Buttfield, plaintiffs, against J. L. Hume, defendant, to recover the balance due upon an open account for money advanced to defendant, and paid, laid out and expended for his account, and for services rendered and performed for defendant at his special instance and request at divers times between the first day of July, 1907, and the first day of June, 1908, at the City, County and State of New York, in connection with the purchase and sale for defendant's account of cotton for future delivery upon the New York Cotton Exchange, pursuant to the rules, regulations, customs and usages of said Exchange, and for the amount due upon a certain promissory note executed by defendant payable to the order of J. W. Buttfield, and by the latter assigned to the firm of Bond and Buttfield.

"The plaintiff's first amended original petition contains the following allegations:

'The plaintiffs at the special instance and request of the defendant at the City, County, and State of New York, advanced to the defendant and paid, laid out and expended for his account divers sums of money, and did and performed for said defendant at the City, County and

State of New York, divers services in and about the purchase and sale of (*sic*) the defendant (*sic*) account cotton upon the New York Cotton Exchange, and in pursuance of the rules, regulations, customs and usage of the said New York Cotton Exchange, a copy of the rules and by laws and regulations being hereto attached and marked Exhibit A, and asked to be made, etc.

'That the said services were rendered and said money paid out by them to said defendant for and at his request in buying and selling for his said account as his agent cotton for future delivery according to the rules and regulations of the New York Cotton Exchange in the City of New York, a copy of said rules and regulations being hereto attached and marked Exhibit, etc.

'Said orders for the purchase and sale of cotton for future delivery were received by plaintiffs and executed with the understanding and agreement between the parties that actual delivery for this account was contemplated, subject to the rules and by laws of the said New York Cotton Exchange, as hereto attached and marked said Exhibit A.

'Plaintiffs allege further that they made said purchase and sales of the cotton for and at the request of the said defendant at the prices respectively authorized by him, and at his instance and request entered into binding contracts of purchase and sale for future delivery in accordance with the said rules and by laws of the said New York Cotton Exchange, a copy of said rules and by laws being hereto attached and marked Exhibit A, and made a part of this petition.

'Plaintiffs further allege that at the several times they made said purchases and sales for the defendant he well knew that actual delivery was contemplated, and well knew that plaintiffs were to make and did make said purchases and sales under and subject to the rules and by laws of the New York Cotton Exchange, and were held

personally bound for carrying out said contract, as will more fully appear by reference to said rules and by laws hereto attached and marked Exhibit A, and plaintiffs allege that they promptly advised the defendant of the said several purchases and sales and that said purchases and sales were made in accordance and with his instruction, subject to the rules and by laws of the New York Cotton Exchange and that said orders for the purchase and sale of cotton for future delivery were received and executed with the distinct understanding that actual delivery was contemplated as provided by the by laws and rules of said Exchange, as will more fully appear by reference to said exhibit A.'

"The by laws of the New York Cotton Exchange pleaded by the plaintiffs contain the following provision:

'The cotton to be of any grade from Good Ordinary to Fair inclusive, and if tinged or stained not below Low Middling Stained (New York Cotton Exchange Inspection and Classification) at the price of —— cents per pound for middling, with additions or deductions for other grades according to the rates of the New York Cotton Exchange existing on the day previous to the date of the transferable notice of delivery.'

"To this pleading the defendant, in the lower court, interposed the following exceptions:

'I. Now comes the defendant in the above entitled cause by his attorney, and excepts to plaintiffs' petition herein and says that the same is not sufficient in law to require him to answer and should be dismissed.

'II. And for special cause of exception defendant shows the following:

'1. It is apparent from the face of plaintiffs' petition that the balance due upon the alleged account sued on, arose out of a gaming transaction in cotton futures on the New York Cotton Exchange, that none of the cotton

alleged to have been bought and sold was delivered, but the account sued on simply represents the difference in the rise and fall of the market on said Cotton Exchange, and were alleged to have been settled by plaintiffs by paying or receiving a margin or profit on each contract, as shown in said account, and that the alleged balance claimed by plaintiff (*sic*) to be due from defendant consists of said alleged margin or profit.

'2. It appears from plaintiffs' petition that said alleged account sued on arose out of transactions on the New York Cotton Exchange, and pursuant to the rules, regulations, customs and usages of said Exchange, and does not show or set forth that in the settlement or closing out of said transaction sued on by delivery or tender of any grade or grades of cotton other than the grade upon which the prices were based in the transaction sued on, that the same were settled or closed out at the actual price for spot delivery of such other grade or grades at the time and place of delivery or tender.'

"Upon this record the Court below entered the following order:

'Thereupon came on to be heard the demurrers and exceptions of defendant to plaintiffs' amended petition and the same having been heard and duly considered, it is the opinion of the Court that said demurrers and exceptions should be sustained, and it is accordingly so ordered, and the plaintiffs declining to amend, it is further ordered that said cause be and the same is hereby dismissed at the cost of plaintiffs, to which order of the court sustaining said demurrers and exceptions, and dismissing said cause, the plaintiffs in open court excepted.'"

*Mr. Charles Pope Caldwell*, with whom *Mr. W. D. Caldwell* was on the brief, for Bond *et al.*

No appearance for Hume.

MR. CHIEF JUSTICE WHITE, after stating the contents of the certificate of the court below as above reproduced, delivered the opinion of the court.

The question as to which the court below desires to be instructed upon the case as stated in the foregoing certificate is this:

"Where a contract between a citizen of the State of New York and a citizen of the State of Texas is entered into, made and executed in the State of New York, for the sale of cotton for future delivery upon the New York Cotton Exchange, pursuant to the rules, regulations, customs and usages of said Exchange, and the same is a valid exigible contract in the State of New York, does the statute of the State of Texas (known as the 'Bucket Shop Law') passed by the 30th Legislature of the State of Texas, in 1907, the same being incorporated in the Revised Criminal Statutes of Texas (1911) as Chapter 3, pages 141, 142, or any public policy therein declared, prevent a district court of the United States, sitting in Texas, wherein a suit is brought to recover for breach of said contract from granting such relief as otherwise but for such statute the parties would be entitled to have and receive?"

We construe the question as simply asking whether under the pleadings as stated in the certificate a cause of action was disclosed which there was jurisdiction to hear, taking into consideration the local law including the provisions of the Texas statute referred to in the question.

It is obvious on the face of the pleadings as stated in the certificate that the contract the enforcement of which was sought was valid under the laws of the State of New York, the place where it was entered into and where it was executed, and this validity was not and could not be affected by the laws of the State of Texas, as in the nature of things such laws could have no extraterritorial opera-

tion. This conclusion is, however, negligible, as the question is not whether the contract was valid, but whether being valid under the law of New York, it was susceptible, consistently with the laws of Texas, of enforcement in the courts of the United States sitting in that State. And this question involves the inquiry: Was there any local public policy in the State of Texas which, consistently with the duty of the courts of that State under the Constitution to give effect to a contract validly made in another State, was sufficient to warrant a refusal by the courts of that State to discharge such duty?

A statement of a few elementary doctrines is essential to a consideration of this issue. Treating the two States as sovereign and foreign to each other—New York, under whose laws the contract was made and where it was valid, and Texas, in whose courts we are assuming it was sought to be enforced—it is elementary that the right to enforce a foreign contract in another foreign country could alone rest upon the general principles of comity. But elementary as is the rule of comity, it is equally rudimentary that an independent State under that principle will not lend the aid of its courts to enforce a contract founded upon a foreign law where to do so would be repugnant to good morals, would lead to disturbance and disorganization of the local municipal law, or in other words, violate the public policy of the State where the enforcement of the foreign contract is sought. It is moreover axiomatic that the existence of the described conditions preventing the enforcement in a given case does not exclusively depend upon legislation but may result from a judicial consideration of the subject, although it is also true that courts of one sovereignty will not refuse to give effect to the principle of comity by declining to enforce contracts which are valid under the laws of another sovereignty unless constrained to do so by clear convictions of the existence of the conditions justifying that course. And

finally it is certain that as it is peculiarly within the prov-
ince of the law-making power to define the public policy
of the State, where that power has been exerted in such a
way as to manifest that a violation of public policy would
result from the enforcement of a foreign contract validly
entered into under a foreign law, comity will yield to the
manifestation of the legislative will and enforcement will
not be permitted. It is certain that these principles which
govern as between countries foreign to each other apply
with greater force to the relation of the several States to
each other, since the obligations of the Constitution which
bind them all in a common orbit of national unity impose
of necessity restrictions which otherwise would not obtain
and exact a greater degree of respect for each other than
otherwise by the principles of comity would be expected.
It is unnecessary to cite authority for these several doc-
trines since, as we have said, they are indisputable, but
they nowhere find a more lucid exposition than that long
ago made by Mr. Chief Justice Taney in *Bank of Augusta*
v. *Earle*, 13 Pet. 519, 589, 590.

Coming to apply these principles from general con-
siderations, as it is undoubted that the New York con-
tract as declared on was not only valid under the law of
New York, but was not repugnant to the common or
general law, as long since settled by this court (*Irwin* v.
*Williar*, 110 U. S. 499; *Bibb* v. *Allen*, 149 U. S. 481; *Clews*
v. *Jamieson*, 182 U. S. 461), and as we have been referred
to and have been able to discover no decision of the courts
of Texas or statute of that State causing its enforcement
to be repugnant to the public policy of Texas, it must re-
sult that the question would have to be answered in the
negative unless a different conclusion is required by the
provisions of the particular state statute referred to in the
question.

The statute is criminal and provides a punishment for
the offences which it defines and the argument is that,

this being true, it necessarily forbids as a matter of public policy the enforcement in Texas of contracts, although lawful by the laws of another State, which, if entered into in Texas, would be criminal, since it must be that the public policy of Texas exacts that the results of a contract which if made in Texas would be punished as a crime shall not be susceptible of enforcement in its civil courts because made in another State. But without stopping to analyze the authorities relied upon to sustain the proposition in order to determine whether they support the doctrine as broadly stated, we observe that although the proposition were to be conceded for the sake of the argument only, that concession is immaterial for this reason: The statute relied upon (the pertinent sections are in the margin [1]) does not make criminal all sales for future delivery

---

[1] Texas Revised Criminal Statutes; 1911, Title 11, c. 3, p. 141.

Art. 538. A bucket shop defined.—A bucket shop, within the meaning of this law, is any place wherein dealing in futures is carried on contrary to any of the provisions hereof.

Art. 539. Futures or dealing in futures defined.—By each of the expressions, "futures," "dealing in futures," and "future contracts," as these terms are used in this law is meant: 1. A sale or purchase, or contract to sell, or any offer to sell or purchase, any cotton, grain, meat, lard, or any stocks or bonds of any corporation, to be delivered in the future, when it was not the bona fide intention of the party being prosecuted under this chapter, at the time that such sale, contract, purchase, or offer to sell or purchase, was made, that the thing mentioned in such transaction should be delivered and paid for as specified in such transaction. 2. Any such sale, purchase, offer or contract, where it was the intention of the party being prosecuted hereunder at the time of making such contract or offer, that the same should, or, at the option of either party, might be settled by paying or receiving a margin or profit on such contract. 3. Any purchase, sale or offer of sale or purchase, or contract for future delivery of any of the things mentioned in this article on, by or through any exchange or board of trade, the rules, by-laws, customs or regulations of which permit such contract or transaction to be settled or closed by delivery or tender of any grade or grades of the thing mentioned in such contract or transaction, other

of the property described, but only forbids and punishes the making of contracts of that nature where certain prescribed conditions are not exacted or do not exist. It looks, therefore, not to prohibit all such contracts but to secure in all when made in Texas the presence of conditions deemed to be essential. Indeed, it goes further, since even although the contract on the subject may have been made with the express stipulation as to delivery exacted by the statute, nevertheless crime and punishment may result as against a particular party to the contract who in bad faith has assented to the express stipulation, which otherwise would be valid. These conclusions we think plainly result from the definitions which the statute makes in the first class as to delivery, in the second class as to option, and in the third as to ultimate performance, none of which conditions we think can be said to necessarily embrace the contract sued upon taking the facts alleged in the petition to be established. It is true the statute contains general provisions in articles 545 and 546 (which we do not reproduce) that wherever a criminal prosecution is commenced against a person who may have made a particular future contract containing provisions in violation of the statute, the presumption shall be *prima facie* that the illegal conditions existed and therefore that there was guilt until the contrary was shown. But we are of opinion that this affords no ground in a civil case brought to enforce a contract, for holding that the averments of the petition must be taken to be untrue in order to defeat a right to be heard simply because under a criminal statute as to particular offences the burden of proof is shifted.

Concluding as we do that, accepting the averments of the petition as true, the cause of action was susceptible

than the grade upon which the price is based in said transaction, at any price other than the actual price for spot delivery of such other grade or grades, at the time and place of delivery or tender.

of being heard in the courts of Texas and therefore was also susceptible of being brought in the courts of the United States in that State, we are of opinion that the question asked should be replied to in the negative. And of course we must not be understood as deciding whether the mere existence of a state statute punishing one who in bad faith, and because of such bad faith, had made an agreement to deliver in a contract of sale which would be otherwise valid, could become the basis of a public policy preventing the enforcement in Texas of contracts for sale and delivery made in another State which were there valid although one of the parties might have made the agreement to deliver in bad faith. In other words, we must not be understood as expressing any opinion on the subject of whether, consistently with the very nature of the relations between the several States resulting from the constitutional obligations resting upon them, the courts of Texas under the guise of a public policy resting merely on the conditions stated could rightfully refuse to enforce a contract validly made in another State, or at all events whether under such circumstances such a contract would not in the nature of things be enforceable in the appropriate courts of the United States.

*A negative answer is therefore made to the question asked and it is ordered that it be so certified.*