**Alice C. WELCH, Plaintiff,**

v.

**Harry S. WELCH, Jr.**

**Civ. A. No. 5466–54.**

United States District Court
District of Columbia,
Civil Division.

Aug. 18, 1958.

<hr />

William Gallagher, Washington, D. C., for plaintiff.

William J. Donnelly, Jr., Washington, D. C., for defendant.

YOUNGDAHL, District Judge.

The present motion is for judgment of condemnation against United Insurance Company for $534.16. The facts giving rise to the present motion are as follows:

Plaintiff brought suit in December, 1954, for separate maintenance and was awarded $150 per month. After this decree of the court, plaintiff's husband left the District of Columbia. To this date he has never paid anything voluntarily upon his indebtedness under the decree.

He began to work in South Carolina as an insurance adjuster for the United Insurance Company, an Illinois corporation doing business also in the District of Columbia. In December, 1955, a writ of attachment and garnishment was issued by this Court directed to the United Insurance Company, which was served upon it at its office in the District of Columbia. The sum of $174.34 wages was found in the possession of the garnishee-defendant Insurance Company, and was paid on the writ of garnishment to the plaintiff. This constitutes the entire sum received by the plaintiff in this case.

Less than a month later, the judgment-debtor and garnishee-defendant met in Chicago, Illinois, and a new contract was negotiated. Under this contract the husband was to be paid his salary in advance.

It is clear to the Court—and it is not disputed—that the contract was made for the express purpose of avoiding garnishment and attachment by the plaintiff. Since that time defendant-husband has received over $15,000 under the arrangement.

Plaintiff, on May 16, 1958, then gained a judgment of $4,075.37 for money due her under the Court's former decree.

On June 16, 1958, an attachment was issued against the United Insurance Company. The writ was served at the company's District of Columbia office but that same day, United again paid to the husband a month's salary of $534.16.

Plaintiff contends that this payment in advance was in violation of the District of Columbia Code and, therefore, plaintiff is entitled to a judgment of condemnation against United Insurance Company of $534.16.

Defendant concedes this to be the law in the District of Columbia, but argues that the contract was negotiated in Illinois and was executed in Illinois and, therefore, Illinois law should govern. It appears to be the law in Illinois that contracts to pay salaries in advance are legal and will frustrate any garnishment, even if made for that express purpose. Wilt for use of Guderyahn v. Hartman Trunk Company, 1920, 215 Ill. App. 182.

The conflicts rule, if applied, would determine the validity of the contract according to the Illinois law and would defeat the motion. There is an exception to the application of this rule, however, and that is where the contract is against the public policy of the state where the suit is brought.

The Supreme Court of the United States was faced with the problem in Bond v. Hume, 1916, 243 U.S. 15, 37 S.Ct. 366, 368, 61 L.Ed. 565, where they were concerned with the enforcement, in Texas, of a contract entered upon and executed in New York. Concededly the contract was valid in New York. The Court said, "Was there any local public policy in the state of Texas which, consistently with the duty of the courts of that state under the Constitution to give effect to a contract validly made in another state, was sufficient to warrant a refusal by the courts of that state to discharge such duty? * * * Treating the two states as sovereign and foreign to each other,—New York, under whose laws the contract was made and where it was valid, and Texas, in whose courts we are assuming it was sought to be enforced,—it is elementary that the right to enforce a foreign contract in another foreign country could alone rest upon the general principles of comity. But, elementary as is the rule of comity, it is equally rudimentary that an independent state under that principle will not lend the aid of its courts to enforce a contract founded upon a foreign law where to do so would be repugnant to good morals, would lead to disturbance and disorganization of the local municipal law, or, in other words, violate the public policy of the state where the enforcement of the foreign contract is sought."

Public policy is very difficult to determine in many cases, but an act of the legislature, the branch most directly in contact with public opinion, is perhaps the most satisfactory measure of this concept.

In this case the policy of the District of Columbia is clear. Thus Title 16, Section 312, D.C.Code, states:

"(b) It shall be unlawful for any employer to pay salary or wages to an employee in advance of the time the same shall be due and payable, for the purpose of avoiding or preventing an attachment or garnishment against the earnings or salary of such employee, and such advance payment, as to the attaching creditor, shall be void: *Provided,* That after the service of one writ of attachment or garnishment on a judgment against an employer, any payment of salary or earnings thereafter before the time when said salary or earnings are due and payable, made within a period of six months after the date of service of said writ or before the earlier satisfaction of such judgment, whichever is the earlier, shall as to such attaching creditor be presumed to be in violation of this subsection and shall cast upon the said employer the burden of proving that such advance payment or payments were not for the purpose of avoiding the attachment of such salary or earnings."

This section should be read together with Title 13, D.C.Code, Sec. 103 relating to service of process upon foreign corporations:

"In actions against foreign corporations doing business in the District *all process* may be served on the agent of such corporation or person conducting its business, or, in case he is absent and can not be found, by leaving a copy at the principal place of business in the District, or, if there be no such place of business, by leaving the same at the place of business or residence of such agent in said District, and such service shall be effectual to bring the corporation before the court." (Emphasis supplied.)

It appears to the Court that the District of Columbia has expressed its wishes on this issue with respect to corporations doing business in the District of Columbia. The District of Columbia's laws do not recognize the legal machinations that were indulged in here by the

garnishee and defendant. Title 13, D. C.Code, Sec. 103 quoted above makes it quite clear that Title 16, Sec. 312 was intended to apply to those corporations doing business in the District of Columbia.

 United has also raised as a defense the fact that the writ of attachment was not served in time. However, this contention should be considered against the background of the entire situation. United had entered upon this contract for the purpose of avoiding attachment. On July 20, 1956, a writ of attachment had been served in this same case and United had answered, "No funds". Thus, the claim by United that it could not in good faith comply is not well taken.

 The Court has, however, considered the situation very carefully as the records in the case reflect it and finds that with due diligence, had United wished to comply with the writ of attachment, United could have answered the writ for the sum in question.

The motion for judgment of condemnation against the United Insurance Company is granted in the sum of $534.16.

Counsel will present the appropriate order.