**Alberto CASTILLEJA, Petitioner,**

**v.**

**Severa CAMERO, Respondent.**

**No. A–11518.**

Supreme Court of Texas.

April 19, 1967.

Rehearing Denied May 24, 1967.

F. B. Godinez, Jr., Alamia & Perkin, Willis G. Perkin, Pharr, Kelley, Looney, McLean & Littleton, Jackson Littleton, Edinburg, for petitioner.

Henrichson & Bates, E. G. Henrichson, Edinburg, for respondent.

GRIFFIN, Justice.

This suit was filed in the 93rd District Court of Hidalgo County, Texas, by Severa Camero against Jose and Famelisa Castilleja, husband and wife, and Alberto Castilleja, their son. Severa Camero sought to recover $17,000.00 which represents one half of the proceeds from a lottery ticket that won in the Mexican National Lottery of September 15, 1964. The case was tried before a jury but before its submission to the jury a non-suit was taken as to Jose and Famelisa Castilleja. Special issues were then submitted to the jury and answered in favor of plaintiff, Severa. Based on answers to the special issues and on the evidence presented, the trial court rendered judgment that plaintiff, Severa, recover the $17,000.00 from defendant, Alberto Castilleja. Defendant was also permanently enjoined from assigning, removing, dissipating, secreting, or hiding that portion of the proceeds found to belong to plaintiff. This judgment was affirmed on appeal, 402 S.W. 2d 265. Alberto Castilleja is petitioner here. We affirm.

Severa and the Castilleja family are neighbors and reside in Edinburg, Texas.

On or about September 11, 1964, Severa and Famelisa agreed to jointly purchase a lottery ticket in the Mexican National Lottery of September 15, 1964. Famelisa was to go the Reynosa, Mexico, the following day to purchase the joint ticket as well as tickets for several others. The tickets in the lottery were of different prices, and Severa and Famelisa agreed to buy a $4.00 ticket for which Severa contributed $2.00. Famelisa went to Reynosa where she purchased seven tickets in the lottery, two of which were numbers 33870 and 33512. When she returned she told Severa that the ticket which they jointly owned was number 33870, and she gave Severa a written memorandum to that effect. On September 15, 1964, the lottery drawing was held in Mexico, and ticket 33870 was declared a winner of $40,000.00. When Severa asked for her share of the proceeds Famelisa denied joint ownership in the winning ticket. She said that ticket 33870 was the ticket she bought for her son, Alberto, and that ticket 33512 was the one jointly owned. Famelisa gave the winning ticket to her son, Alberto, who went to Mexico; collected the money, $34,000.00 after taxes by the Mexican government; and deposited it in his personal account in the Banco Longoria in Reynosa, Mexico.

The above facts were disputed by petitioner, who contended that Severa contributed only $1.00 toward the purchase of a $4.00 lottery ticket. He also contended that although Famelisa had originally told Severa they jointly owned ticket 33870, this was a mistake which was corrected before the drawing. According to petitioner, he considered 33870 his "lucky number" and that ticket had been bought for him. Famelisa, it was said, realized her mistake and told Severa before the drawing that 33870 was her son's ticket and 33512 was the jointly owned ticket. However, the jury found that Severa contributed $2.00 toward a $4.00 lottery ticket, and that the ticket purchased for joint ownership was 33870.

The cause of action asserted by Severa is for conversion of the $17,000.00 fund in question. In the trial court she proved that she was owner of the fund and that it is being withheld from her. This is not contested. The basis of this appeal is that in order for Severa to prove her title and right to the fund, she had to rely on and prove an illegal transaction. Petitioner argues that because of this Severa's cause of action cannot be enforced.

The Court of Civil Appeals agreed that the contract between Severa and Famelisa, and by which respondent acquired title, was based on an illegal transaction and unenforceable in Texas courts. However, the court held that the cause of action against Alberto was not dependent upon the contract since he was a stranger to the transaction between Severa and Famelisa. The court further held that as a stranger to the transaction Alberto could not raise the defense of illegality.

■ The agreement between Severa and Famelisa to jointly purchase a ticket in the National Lottery of Mexico and to divide the proceeds, if any, was not an illegal contract. It neither violated nor aided in the violation of any gaming statute of Texas. The only other jurisdiction involved was Mexico. In Mexico the purpose of the contract had the express approval of the Mexican government in that the Mexican government has a revenue interest in the lottery. Thus the agreement was to do a lawful thing—participate in the National Lottery of Mexico, in a lawful manner—by going to Mexico. This meant that the partnership, in the form of one or more members, had to go to Mexico, buy the tickets in Mexico, and collect the proceeds, if any, in Mexico. It is at this point, collection from the lottery, that Severa's right and title to the money arose, and at this point Texas had not been involved in any manner other than as the place where the agreement was made.

■ Thus the transaction upon which title is based is one which related solely to Mexico and which required performance in Mexico. A contract which is made in one jurisdiction but which relates to and is to be performed in another jurisdiction is governed by the law of the place of performance, Seiders v. Merchant's Life Ass'n, 93 Tex. 194, 54 S.W. 753 (1900); Fidelity Mut. Life Ass'n v. Harris, 94 Tex. 25, 57 S.W. 635 (1900); Byers v. Brannen, 30 S.W. 492 (Tex.Civ.App., 1894, writ ref.). There is both testimony and demonstrative evidence in the record which establish that the lottery which was the subject of this contract was sponsored by the Republic of Mexico for the purpose of raising public welfare revenue and is therefore legal in that country.

Petitioner relies principally on the case of Crutchfield v. Rambo, 38 Tex.Civ.App. 579, 86 S.W. 950 (1905, writ ref.), for his position that this contract is part of an illegal transaction, contrary to the public policy of Texas, and unenforceable in Texas courts. In that case the parties bought several tickets in the Honduras National Lottery and then agreed that if either won, the winner would divide the proceeds with the other. A ticket held by one of the parties did win, but he refused to divide according to the agreement. The court refused to enforce the claim because the contract was based on an illegal transaction. This case is easily distinguishable from the case at bar. In *Crutchfield* the entire transaction, i. e. the sale and purchase of the lottery tickets, the collection of the prize, and the agreement to divide the proceeds, took place in Texas. Since no other jurisdiction was involved, it had to be governed by Texas law. In that case an agent of the Honduras lottery was in Fort Worth, Texas, selling tickets. This was a specific violation of Article 394 of the Texas Revised Penal Code (1895), which was based on Article 3, § 47 of the Vernon's Ann.St. Texas Constitution (1876). Although the *buying* of the tickets constituted no penal violation, the selling of them did. Thus the parties to the contract were engaged in and aiding in the violation of Texas law. This

tainted any agreement they made pursuant to the purchase. A claim based upon or collateral to an illegal transaction is unenforceable. Floyd v. Patterson, 72 Tex. 202, 10 S.W. 526, 13 Am.St.Rep. 787, 789 (1888); DeLeon v. Manuel Trevino & Bro., 49 Tex. 88, 30 Am.St.Rep. 101 (1878); Russell v. Kidd, 37 Tex.Civ.App. 411, 84 S.W. 273 (1904, writ dism'd). As stated above, the agreement in the present case did not relate to or involve Texas law. There was no illegal transaction involved.

The question presented to this Court is whether the Texas courts will recognize this foreign right, a valid claim arising in another jurisdiction, upon which title is based and which gives rise to this cause of action for conversion. It has been demonstrated that Texas law is not involved; thus it becomes necessary to decide whether Texas policies or Texas interests are sufficiently involved to deny recognition of the right by Texas courts. We hold that they are not. The test for refusing to enforce a right lawfully arising in another jurisdiction has been stated in this manner: "To justify a court in refusing to enforce a right of action which accrued under the laws of another state, because against the policy of our laws, it must appear that it is against good morals or natural justice, or that for some other reason the enforcement of it would be prejudicial to the general interests of our own citizens." State of California v. Copus, 158 Tex. 196, 309 S.W.2d 227, 232, 67 A.L.R. 2d 758 (1958) quoting Herrick v. Minneapolis & St. L. Ry. Co., 31 Minn. 11, 16 N.W. 413, 414 (1883).

The question of Texas public policy in regard to enforcement of claims arising in other jurisdictions and which relate, directly or indirectly, to gambling transactions has been the subject of several cases. Bond v. Hume, 243 U.S. 15, 37 S.Ct. 366, 61 L.Ed. 565 (1917); and Jacob v. Hyman, 286 F. 346 (C.C.A. 5 1923), dealt with the enforcement of claims arising from dealings in cotton futures. The courts held

that a federal court sitting in Texas could enforce such a claim, governed by the law of another jurisdiction, without offending Texas public policy even though Texas had statutes prohibiting such "wagering" transactions. Garza v. Richmond, 249 S.W. 889 (Tex.Civ.App., 1923, n. w. h.); and Springer v. Sahara Casinos Company, 322 S.W. 2d 33 (Tex.Civ.App., 1959, w. o. j.), are cases in which a party sought to enforce a check given by a Texas resident for gambling purposes in another jurisdiction. The checks were denied enforcement, but these cases are distinguishable from the present case. From the facts stated in *Garza* and *Springer*, it appears that these checks were on Texas banks and therefore payable in Texas. Checks are governed by the same conflicts rules as are contracts, 10 C.J.S. Bills and Notes § 47. Therefore these checks were contracts to be performed in Texas and governed by Texas law, 10 C. J.S. § 49.

There are numerous cases which hold that rights arising from gaming transactions occurring in Texas will not be enforced because to do so would be contrary to public policy, but that policy is not here involved. The laws of Texas and the policies upon which they are based are concerned with the events taking place within our borders. When the laws and policies of another sovereign are involved, a different standard is applied, State of California v. Copus, supra.

In applying the facts of the case at bar to the standard referred to above, it cannot be said that recognition of the event which is indirectly involved here, and which gave rise to Severa's title, is against "good morals or natural justice." This is especially so when such a position would require protecting a person who has converted the property of another. Conversion is an act which is indeed contrary to natural justice. It cannot be said that recognition of the event giving rise to title is "prejudicial to the general interests of our own citizens." Neither the interests of a

third party, as if this right arose from a contract to swindle, nor the rights of the public generally, as if this right arose from a contract to violate the antitrust laws, are involved. However, it can be said that Texas has a strong public policy against conversion of property. The strength of that policy is demonstrated by the fact that exemplary damages may be recovered when the conversion is accompanied by the elements of fraud and oppression, Gordon v. Jones, 27 Tex. 620 (1864). This policy against conversion is the paramount interest involved here.

Having established that there is no taint in this transaction which prevents enforcement of the right arising therefrom, it follows that petitioner has unlawfully converted funds belonging to respondent. We hold that respondent has ownership of and a lawful right to $17,000.00 of the specific fund now on deposit in the Banco Longoria, Reynosa, Mexico, to the account of Alberto Castilleja, and that ownership right is enforceable in the courts of Texas. The judgments of the trial court and Court of Civil Appeals are affirmed.

CALVERT, C. J., and POPE, J., dissenting.

POPE, Justice (dissenting).

I respectfully dissent. The majority has incorrectly identified the contract upon which plaintiff Severa Camero sued and must rely. The majority holds that the contract upon which plaintiff sued and recovered judgment was a Mexican contract where lotteries are legal. The contract between the lottery ticket owners and the Mexican National Lottery is one contract. The contract between the ticket holders themselves to share in and divide equally any winnings from the lottery is a distinct and separate contract. Plaintiff asserted no action against the Mexican National Lottery. Her action is based upon her contract of partnership in ticket No. 33870 which she made with Famelisa in Texas.

The majority has, by reason of its first error in selecting the wrong contract upon which plaintiff relies, concluded that the contract was performable in Mexico rather than Texas. The contract sued upon was performable in Texas. Plaintiff Severa Camero and Famelisa made a contract of co-ownership of the ticket and to share equally in any lottery prize. That contract was made in Edinburg, Texas. Performance on that contract meant an equal division of the lottery prize. The contract was admittedly made in Texas. The presumption is that the parties contracted with reference to the law of the place where the contract was made, which was in Texas. Fidelity Mutual Life Ins. Co. v. Harris, 94 Tex. 25, 57 S.W. 635 (1900); Cantu v. Bennett, 39 Tex. 303, 304 (1873); 17 C.J.S. Contracts §§ 20, 257 (1963). The governing rule is summarized in Stumberg, Principles of Conflict of Laws (3rd ed. 1963):

"* * * In a bilateral contract, when each party is to perform his promise in a different place, the rule necessarily breaks down, and the courts have usually felt compelled to refer the question of validity to the place of making. And when no place of performance is named in the contract, it is often necessary, in seeking the place of performance to resort to artificial standards and to presume that the contract was performable where made or at some other place."

The majority therefore builds upon a false premise when it holds that "the transaction upon which title is based is one which related solely to Mexico and which required performance in Mexico."

The case of Crutchfield v. Rambo, 38 Tex.Civ.App. 579, 86 S.W. 950 (1905, writ ref.) refused enforcement of an agreement to share in winnings from the lottery in Honduras, where lotteries were also legal. The plaintiff, Crutchfield, sued Rambo for one-half of the prize won by a ticket. Each party purchased lottery tickets and agreed that if any of the tickets won, the other party would share equally in the prize. The

court identified the contract upon which the plaintiff sued. The contract to share in the proceeds was made in Texas and though it concerned the Honduras lottery, the court held it was not a contract governed by Honduras law. The majority has here held that the contract is governed by the Mexican law. *Crutchfield* held and recognized that it was the Texas contract between the parties which was sued upon and that Texas law governed rather than the law of Honduras.

The majority distinguishes *Crutchfield* because the lottery tickets were sold in Texas which was a violation of the Texas penal law. There, as in this case, it was the purchaser who asserted rights. There, as here, a purchaser of a lottery ticket violated no section of the Penal Code. There, as here, the argument was made that a purchaser should be permitted to recover in his action upon the lottery ticket since he violated no law. This was the argument to which the court addressed itself and rejected, saying:

> "The trial judge held that the contract between the parties to divide the proceeds arising from a drawing in a lottery was contrary to law and public policy, and should not be enforced. We think the conclusion was correct. Lotteries are condemned by the laws of this state, and punishment is provided for those who establish lotteries or who may be engaged in the sale of lottery tickets, and it follows that any contract dependent upon lottery tickets is manifestly contrary to public policy. The contract in this case was based upon the chance of drawing a prize through one or more of the tickets they had purchased, and it would not matter, if, as contended, the parties had formed a partnership and had bought the tickets; the law would not lend itself to compel an accounting between partners engaged in a scheme to make money that is condemned by the laws of the state. There can be no force in the argument that buying lottery tickets is not prohibited by the laws of Texas, and con-

sequently a contract based on the purchase of such tickets would not be obnoxious to public policy. The law, in condemning the sale of lottery tickets, put the stamp of disapproval upon the whole transaction, and the buyer, although no penalty is attached to his act, is engaged in violating one of the statutes of the state. Suppose that a ticket bought by some person should draw a sum of money, but it should be withheld from the purchaser of the ticket, no court would aid the collection of the money from the lottery, for the reason that the buyer and seller would be in pari delicto, and could not enforce their contracts in the courts of the state."

The determinative test for the right to recover on a gaming contract is stated in *Crutchfield* as it was in Oliphant v. Markham, 79 Tex. 543, 15 S.W. 569, 23 Am.St. Rep. 363 (1891). That test looks to the plaintiff's cause of action to determine whether the plaintiff "requires any aid from the illegal transaction to establish the case." Beer v. Landman, 88 Tex. 450, 31 S.W. 805 (1895). See, Lewis v. Davis, 145 Tex. 468, 199 S.W.2d 146 (1947); Oliphant v. Markham, supra; Floyd v. Patterson, 72 Tex. 202, 10 S.W. 526 (1888); Read v. Smith, 60 Tex. 379 (1883); Hall v. Edwards, 222 S. W. 167 (Tex.Comm.App.1920, judg. approved); Norman v. B U Christi & Co., 363 S.W.2d 175 (Tex.Civ.App.1952, writ ref. n. r. e.); Crutchfield v. Rambo, supra; Russell v. Kidd, 84 S.W. 273 (Tex.Civ.App. 1904, writ dism'd); 26 Tex.Jur.2d Gaming and Prize Contests § 65 (1961). The rule is succinctly stated in Hall v. Edwards, supra:

> "The authorities are agreed that a court will not lend its aid, in any manner, toward carrying out the terms of an illegal contract, and, when a plaintiff cannot establish his cause of action without relying upon such contract, he cannot recover."

Plaintiff, Severa Camero, must rely upon her illegal contract with Famelisa to share in the winnings of the lottery. The issue between her and Alberto was the ownership

of lottery ticket 33870. This was her theory of recovery and the issues which were submitted to the jury. The issues necessarily form the basis for her judgment and demonstrate this to be her theory:

"Special Issue No. 1. Do you find from a preponderance of the evidence that Famelisa Castilleja purchased ticket No. 33870 for the benefit of the plaintiff, Severa Camero and the defendant, Famelisa Castilleja?

"Special Issue No. 2. What do you find from a preponderance of the evidence was the amount paid by plaintiff, Severa Camero to the defendant, Famelisa Castilleja on or about September 11, 1964?"

The majority, after its error in holding that plaintiff relies upon a Mexican contract which is performable in Mexico, makes further error in rejecting Texas' public policy and holding that it will enforce the lottery contract which is not prohibited by the policy. For support of this proposition, the majority cites State of California v. Copus, 158 Tex. 196, 309 S.W.2d 227, 232 (1958). The court in *Copus* was treating a policy situation about which all Texas law was previously silent. There were no constitutional provisions, statutes, or cases which guided the court in declaring the policy of Texas. The court was called upon to write upon a clean slate. Certainly, as held by the court, Texas has no strong policy reasons to forbid enforcement of a California judgment which required a son under a California statute to support his father during the time the son lived in California. In our case we do not have a Mexican judgment. The policy of this state about gambling and lotteries, on the other hand, has been declared by Constitution, statutes and cases, is easily discernable, and has been consistent and unchanged for more than a century.

Texas policy about lotteries is declared by our Constitution, statutes and judicial decisions. Those are the proper repositories of a state's public policy, District Grand Lodge No. 25 Grand United Order of Odd Fellows v. Jones, 138 Tex. 537, 160 S.W.2d

915 (1942), and not "the varying opinions of lawyers or judges as to the demands or interest of the public." Southern Pac. Co. v. Dusablon, 48 Tex.Civ.App. 203, 106 S.W. 766 (1908, no writ).

Lotteries have been denounced as contrary to public policy in every Constitution of Texas since 1845. Article VII, § 17 of the 1845 Constitution expressly declared that:

"* * * No lottery shall be authorized by this State; and the buying or selling of lottery-tickets within this State, is prohibited."

This provision prohibiting lotteries appeared unchanged in the Constitutions of 1861, 1866, and 1869. But because this provision was so narrowly drawn, it was easily and freely evaded by the employment of the so-called gift enterprise. Consequently, when the framers of the present Constitution met in the 1875 constitutional convention, they sought to remedy this abuse of the lottery laws by adopting Article III, § 47 which provides that:

"The Legislature shall pass laws prohibiting the [1] establishment of lotteries and gift enterprises in this State, [2] as well as the sale of tickets in lotteries, gift enterprises or [3] other evasions involving the lottery principle, established or existing in other States."

By adopting § 47, it is evident that the framers intentionally declared "not only lotteries, but 'gift enterprises and other evasions involving the lottery principle' as contrary to the public policy of the state, and made it the duty of the Legislature by penal laws to prohibit their operation." City of Wink v. Griffith Amusement Co., 128 Tex. 40, 100 S.W.2d 695 (1936). In compliance with this mandate, the Legislature enacted art. 654, Vernon's Ann.P.C., which makes the establishment and operation of a lottery, as well as the sale of lottery tickets, a criminal offense.

The majority holds that lotteries are legal in Mexico; therefore Texas courts will en-

force a Mexico gaming contract. Garza v. Richmond, 249 S.W. 889 (Tex.Civ.App. 1923, no writ) holds directly to the contrary. Richmond played roulette in Mexico and gave a check for $300.00 to Garza who ran the gaming house. The court refused to enforce the check though roulette was a legal enterprise in Mexico. California refuses to enforce gambling contracts made in Nevada where gambling is legal. Braverman v. Horn, 88 Cal.App.2d 379, 198 P.2d 948 (1948); Hamilton v. Abadjian, 30 Cal. 2d 49, 179 P.2d 804 (1947).

Texas courts, applying their own public policy, have denounced things done and authorized to be done beyond the borders of Texas in many instances though lawful outside of Texas. In Wilson v. Smith, 373 S. W.2d 514 (Tex.Civ.App.1963, writ ref. n. r. e.) the court struck down a provision of a Texas testamentary trust which authorized the establishment of a clinic-hospital which was in violation of the Medical Practice Act, the Chiropractic Act, and the Hospital Licensing Act of Texas. The fact that the proposed clinic-hospital was to be established in the State of California where it would be entirely lawful did not persuade the court to ignore the Texas public policy. Taylor v. Leonard, 275 S.W. 134 (Tex.Civ. App.1925, no writ) held that a contract for the sale of California land made by a Texas married woman while she temporarily resided in California would not be enforced because the enforcement of the California contract would contravene Texas public policy. Accord, Bramwell v. Conquest, 2 S.W. 2d 995 (Tex.Civ.App.1928, no writ). A Minnesota contract that was legal in that state but illegal in Texas was not enforced in Texas because it contravened our public policy. Watkins Co. v. McMullan, 6 S.W. 2d 823 (Tex.Civ.App.1928, no writ). Accord, Byrd v. Crazy Water Co., 140 S.W.2d 334 (Tex.Civ.App.1940, no writ).

It is unfortunate that the court has applied the law and policy of Mexico in a case in which Mexico is not the forum, none of the parties is or was citizens of Mexico, and the case does not concern a contract made in Mexico. The Mexican National Lottery and Mexico have no concern or interest in this dispute. It is unfortunate that Texas courts are required to apply the law of a foreign jurisdiction to a dispute between its own citizens. It is unfortunate that in doing so Texas holds that its own policy is inferior to that of a foreign jurisdiction. In my opinion Texas is the only jurisdiction which now has any interest in this dispute, and its own public policy should apply. See, Currie, The Conflict of Laws, p. 183–184 (1963).

I would reverse the judgments of the courts below.

CALVERT, C. J., joins in this dissent.